Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Emily Guzman, *o/b/o* R.N., a minor, <br><br> *Plaintiff,* <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> *Defendant.* | Civil No.: 19-16786 (ES) <br><br> OPINION |

**Esther Salas, U.S.D.J.**

**I.     Introduction**

Before the Court is an appeal filed by plaintiff Emily Guzman, on behalf of a minor, R.N., seeking remand of the decision of the Commissioner of Social Security denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381, *et seq.* (D.E. 1.) The Court has subject-matter jurisdiction under 42 U.S.C. §§ 1383(c)(3) and 405(g) and decides this matter without oral argument, *see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons discussed below, the Court affirms.

**II.    Factual and Procedural Background**

On April 28, 2015, Guzman filed an application for SSI on behalf of her minor child, R.N. (D.E. 5, Administrative Record ("R."), at 184.) Guzman claims R.N. has

been disabled since April 15, 2014, when R.N. was five years old. (*Id.* at 184, 209.) R.N., Guzman claims, suffers from attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"). (*Id.* at 212.) Guzman's application was denied initially and on reconsideration. (*Id.* at 92–94, 107–10.) A hearing was held on the application before an Administrative Law Judge ("ALJ") on May 8, 2018, at which Guzman testified. (*Id.* at 31.)

On June 26, 2018, the ALJ denied Guzman's application. (*Id.* at 12.) The ALJ ruled that although R.N.'s ADHD[1] and ODD constitute severe impairments, R.N. was not disabled within the meaning of the SSA because her impairments, singularly and in combination, did not meet, medically equal, or functionally equal a listed impairment ("listing") found in Appendix 1 of 20 C.F.R. Part 404, Subpart P. On June 14, 2019, the Appeals Council denied Guzman's request for review. (*Id.* at 1–6.) Guzman then filed the instant appeal. (D.E. 1.)

### III. Legal Standards

#### A. Standard Governing Benefits

Under the SSA, the Social Security Administration is authorized to pay supplemental security income to "disabled" persons. 42 U.S.C. § 1382(a). A child (i.e., an individual under the age of 18) is "disabled" if he or she "has a medically

---

[1] The ALJ found R.N. had a severe impairment of attention deficit disorder ("ADD") but then later discussed medical evidence concerning ADHD. The parties similarly interchangeably refer to ADD and ADHD. Because nothing turns on any distinction between the two, and because Guzman's application claimed R.N. had ADHD, the Court will refer to ADHD throughout.

2

determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Regulations promulgated under the SSA set forth a three-step sequential process for determining whether a child is disabled. 20 C.F.R. § 416.924. The claimant bears the burden of establishing these three steps. *See Poulos v. Comm'r of Soc. Sec. Admin.*, 474 F.3d 88, 92 (3d Cir. 2007).

At step one, the ALJ assesses whether the child is currently engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is engaging in substantial gainful activity, then the child is not disabled and the ALJ's inquiry ends. *Id.* If the ALJ finds that the child is not engaging in substantial gainful activity, the ALJ proceeds to step two.

At step two, the ALJ determines whether the child suffers from a severe impairment or combination of impairments. *Id.* § 416.924(c). Absent such an impairment or combination of impairments, the child is not disabled. *Id.* Conversely, if the child has a severe impairment or combination of impairments, the ALJ proceeds to step three. *Id.* § 416.924(a).

At step three, the ALJ determines whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals a listing found in Appendix 1 of 20 C.F.R. Part 404, Subpart P. *Id.* § 416.924(d). If the child has an impairment that meets, medically equals, or functionally equals a listing, the child

3

is deemed disabled under the SSA. *Id.* § 416.924(d)(1).

An impairment or combination of impairments "medically equals" a listing "if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a). To determine whether an impairment medically equals a listing, the ALJ considers all evidence in the record about the claimant's impairment that is relevant to a finding of medical equivalence. *Id.* § 416.926(c).

If "the child's impairment does not medically meet a listing . . . the examiner must determine whether the impairment functionally equals a listing." *Jaramillo v. Comm'r of Soc. Sec.*, 130 F. App'x 557, 560 (3d Cir. 2005). A child has an impairment or combination of impairments that "functionally equals" a listing if the child has either two "marked" limitations or one "extreme" limitation in the following domains: "(i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for yourself, or (vi) health and physical well-being." 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi). A limitation is "marked" if it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2). Such a limitation is "'more than moderate' but 'less than extreme.'" *Id.* A limitation is "extreme" if it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3). While an extreme limitation is "more than marked," it is not necessarily the equivalent of "a total lack or loss of ability to function." *Id.* In determining whether an impairment or combination of impairments "functionally

4

equals" a listing, the ALJ considers "all the relevant factors," including the effectiveness of the child's medication, the child's ability to function in school, and the effects of structured settings on the child's performance. *Id.* §§ 416.926a(a)(1)–(3).

### B.   Standard of Review

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner." *Chandler v. Comm'r of Soc. Sec. Admin.*, 667 F.3d 356, 359 (3d Cir. 2011). But the "findings of the Commissioner . . . as to any fact, *if supported by substantial evidence*, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). As a term of art used throughout administrative law, the term "substantial evidence" may vary depending on the context. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In this context, "the threshold for such evidentiary sufficiency is not high." *Id.* Importantly, the substantial evidence standard does not give rise to categorical rules but rather depends on a "case-by-case" inquiry. *Id.* at 1157. "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *accord Biestek*, 139 S. Ct. at 1154. And although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec. Admin.*, 370 F.3d 357, 360 (3d Cir. 2004). Substantial evidence may exist, and the Court must affirm, "even if [the Court] would have decided the factual inquiry

5

differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec. Admin.*, 186 F. App'x 280, 284 (3d Cir. 2006). The Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

But an "ALJ cannot reject evidence for no reason or for the wrong reason." *Cotter v. Harris,* 642 F.2d 700, 706 (3d Cir. 1981). Thus, an ALJ "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). That rule, however, "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of [the rule] is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

## IV. The ALJ's Decision

At step one, the ALJ found that R.N. had not engaged in substantial gainful activity. (R. at 18.)

At step two, the ALJ found that R.N.'s ADHD and ODD constituted severe impairments. (*Id.*)

At step three, the ALJ considered "Listing 112.11" but found that because "the claimant only has less than marked or no limitations in the domains, as discussed below,

the claimant's conditions do not meet or equal a listing." (*Id.*) Listing 112.11 is for neurodevelopmental disorders such as ADHD. The ALJ also found that R.N. does not have an impairment or combination of impairments that functionally equals the severity of a listing. (*Id.*) For this determination, the ALJ considered all six domains, the first three of which are relevant on appeal. (*Id.* at 20–26.) For each, the ALJ found that R.N. has less than a marked limitation. (*Id.* at 21–23.) As to the first domain—acquiring and using information—the ALJ explained that although R.N. had some limitations, R.N. was improving, doing well in school while on medication, and had strong comprehension skills. (*Id.* at 21.) As to the second domain—attending and completing tasks—the ALJ explained that while R.N. needs additional time to complete tasks, there was no indication R.N.'s limitation was marked, R.N. was in general education for math, and R.N. was progressing academically. (*Id.* at 22.) As to the third domain—interacting and relating with others—the ALJ explained that although R.N. had some difficulty with behavior and in following rules, R.N.'s teachers' reports did not indicate R.N. had difficulty in this domain and other records described R.N. as polite and kind. (*Id.* at 23.)

## V. **Discussion**

Guzman raises two arguments challenging the ALJ's findings at step three.

First, Guzman argues that the ALJ failed to consider Listing 112.08 in his analysis of medical and functional equivalency. (Pl. Mov. Br. at 6.) Listing 112.08 is for personality and impulse-control disorders, such as ODD, and applies to children ages

7

3 to 18 who satisfy Listing 112.08A and Listing 112.08B:

> A. Medical documentation of a pervasive pattern of one or more of the following:
> 1. Distrust and suspiciousness of others;
> 2. Detachment from social relationships;
> 3. Disregard for and violation of the rights of others;
> 4. Instability of interpersonal relationships;
> 5. Excessive emotionality and attention seeking;
> 6. Feelings of inadequacy;
> 7. Excessive need to be taken care of;
> 8. Preoccupation with perfectionism and orderliness; or
> 9. Recurrent, impulsive, aggressive behavioral outbursts.
>
> . . .
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):
> 1. Understand, remember, or apply information (see 112.00E1).
> 2. Interact with others (see 112.00E2).
> 3. Concentrate, persist, or maintain pace (see 112.00E3).
> 4. Adapt or manage oneself (see 112.00E4).

Guzman identifies subsections 3 and 9 as relevant to 112.08A as it relates to R.N.'s ODD. (*Id.* at 11 n.2.) Guzman also argues that the ALJ appears to have confused the domains, which are relevant to functional equivalency, with the factors laid out in Listing 112.08B, which are relevant to medical equivalency. (*Id.* at 11.) The Commissioner concedes error but argues that the error was harmless because R.N. neither meets Listing 112.08 nor suffers from an impairment whose severity medically equals that listing. (Comm'r Opp. Br. at 9.)

The Court agrees with the Commissioner. "Ordinary harmless error review, in which the appellant bears the burden to demonstrate harm, is applicable to

administrative appeals." *Holloman v. Comm'r Soc. Sec. Admin.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Guzman "therefore must '*explain* [ ] . . . how the . . . error to which [she] points could have made any difference.'" *Id.* (quoting *Sanders*, 556 U.S. at 413). In this context, Guzman must show how she "might have prevailed at step three if the ALJ's analysis had been more thorough." *Id.* Guzman makes no attempt to do so. She does not cite any documentation remotely suggesting R.N. has a pervasive pattern of disregarding or violating the rights of others, *see* Listing 112.08A(3), or of recurrent, impulsive, and aggressive behavioral outbursts, *see* Listing 112.08A(9). Instead, she merely identifies, in a footnote of her brief, those factors as relevant. (Pl. Mov. Br. at 11 n.2.) Nor does Guzman advance any argument concerning Listing 112.08B. The Court therefore is without any basis to remand this case as requested. *See id.* ("Holloman offers no answer to that question and therefore no basis for us to remand the case to the ALJ."); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) ("Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand . . . ."); *Hendry v. Comm'r of Soc. Sec. Admin.*, No. 16-08851, 2018 WL 4616111, at *12 (D.N.J. Sept. 26, 2018) (Zoss, J.) ("Simply put, Plaintiff points to no evidence that would support a finding of a marked limitation in one, let alone two, of the paragraph B functional categories as required to satisfy Listing 12.07. The Court therefore finds that the ALJ's failure to discuss Listing 12.07 at Step

9

Three does not warrant remand." (internal citation omitted)).

Second, Guzman argues the ALJ's analysis of functional equivalence, specifically, his analysis of the domains, was too conclusory and thus immune from judicial review. (Pl. Mov. Br. at 12.) In support of this argument, Guzman cites evidence she purports was not considered by the ALJ that, if considered, might have made a difference in the outcome. (*Id.* at 15–18.) Specifically, Guzman points to Exhibit 17E—an individualized education program ("IEP") report dated March 23, 2018, in which R.N.'s school district conducted an annual review of R.N.'s progress.

But as the Commissioner points out, the ALJ *did* consider the March 23 IEP report. The ALJ simply read the report in a different light than Guzman, explaining:

> February 2018 records note that the claimant was making academic progress; the complaint was noted to be taking responsibility and ownership for her learning (Ex. 17E, pg. 4). March 2018 testing noted low scores in reading and math problem solving; the claimant was cooperative and engaging during WISC-V administration, with scores falling in the low average range (Id., pg. 5). The claimant was recommended for special education (Id.). The claimant was described as 'outgoing, kindhearted, helpful and polite' and the notes indicate that the claimant likes to help others, participates in class consistently and contributes to classroom discussions.

(R. at 20.) The ALJ later cited the March 23 IEP report to note R.N.'s academic progress in finding that her limitations in the second domain—attending and completing tasks—was less than marked. (*Id.* at 22.) Thus, it appears, the ALJ read the March 23 IEP report as generally positive for R.N.'s progress and cutting against a finding of disability in her social security case.

Guzman, however, accuses the ALJ of cherry-picking evidence for failing to note many of R.N.'s limitations as described in the March 23 IEP report. (Pl. Mov. Br. at 15–17.) But the ALJ considered many of R.N.'s limitations. (R. at 19–20.) Though he did not explicitly consider every factor, such as the fact R.N. was held back in first grade at Guzman's request, the ALJ's analysis did what he must—provided a "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. The ALJ simply reached a conclusion—a reasonable conclusion—that R.N.'s limitations in the first three domains was less than marked. Although the Court may have reached a different conclusion considering the entire record anew, that is not the standard of review. And Guzman's cherry-picking accusation appears to cut in the opposite direction. Guzman offers a block quote consisting of two pages of her brief but uses an ellipsis to omit three paragraphs outlining R.N.'s progress. (*Id.* at 16.) For example, the omitted paragraphs explain that R.N.'s "teachers report that she is making progress academically"; that "she is taking responsibility and ownership of her learning"; that she "benefits from extra time to complete tasks"; and that her "mother shared that she is pleased with [R.N.'s] progress academically" and "motivation for learning." (Exhibit 17E, at 4.) The Court must affirm where, as here, the ALJ's interpretation rests on a "rational interpretation" of the record. *Izzo*, 186 F. App'x at 284. The Court cannot, as Guzman asks, reweigh the evidence or countermand the ALJ's reasonable findings. *Williams*, 970 F.2d at 1182.

11

## VI. <u>Conclusion</u>

For the foregoing reasons, the Court affirms the decision of the Commissioner. An appropriate order will follow.

Dated: March 16, 2021

*/s/Esther Salas*
Esther Salas, U.S.D.J.